UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| V. | § Crim. No. SA-06-CR-365 § § |
| JOSE ARTURO VEGA | § |

**ORDER**

On this day came to be considered Defendant's Motion to Suppress (docket no. 16).

1. On May 4, 2006, Balcones Heights Police Officers responded to a call about a disturbance/fight at a convenience store parking lot at 2:19 a.m. When the police officers arrived there was no actual fight in progress, but the two males were visibly upset. When Sergeant Onofre approached the scene he saw a third individual sitting in a car passenger seat. The passenger door was open and the individual seated there appeared to be leaning down and his hands were not visible. It appeared to Sergeant Onofre that the individual was reaching down for something. The individual sitting in the passenger seat ultimately was identified as Darryl Gonzalez.

2. Because of concern for the various officers' safety, Mr. Gonzalez was asked to get out of the vehicle, show his hands and was patted down for weapons. An illegal expandable baton or asp was found on Gonzalez's person.

3. Sgt. Onofre yelled out to the other officers at the scene that he found a weapon. At this time the Defendant and Sigala were patted down. The Defendant was found to be carrying a small, but not illegal knife.

4. Mr. Gonzalez was handcuffed and escorted to a police vehicle. When Sgt. Onofre walked passed the open passenger door he noticed an automatic pistol on the passenger floor board. Sgt. Onofre advised the other officers that he found a gun at which time the Defendant and Luis Sigala were detained and placed in handcuffs. The officer detaining the Defendant specifically informed the Defendant that he was being detained, but was not under arrest.

5. The gun found in the car was ultimately determined to be a Beretta 9 mm loaded with one round in the chamber and fifteen rounds in a clip.

6. Sgt. Onofre proceeded to inform Gonzalez that he was being arrested for possession of the asp and handgun, during which time he denied ownership of the handgun.

7. Officer Peters interviewed the Defendant. No *Miranda* warnings were given. The Defendant was questioned by the police as to what transpired. In this interview the Defendant explained that he arrived at the convenience store to pick up Sigala and Gonzalez, who were left at the convenience store by their girlfriends because they were intoxicated. The Defendant explained that he was going to drive them to their homes. The Defendant also explained that he knew there was a loaded handgun in the car and that he needed a gun for protection from certain gangs who were out to get him. At that point the Defendant was placed under formal arrest for unlawfully carrying a handgun. After a dispatcher notified the officers that the Defendant was a convicted felon, he was then notified he was being placed under arrest for being a felon in possession. The Defendant thereafter requested that the police call his girlfriend so that she could pick up his vehicle, rather than the police towing the vehicle. The police, however, decided to have the car impounded and inventoried.

8. Initially the Defendant sought to have the handgun suppressed. Because of the testimony elicited during the suppression hearing, Defendant's counsel acknowledged that no grounds existed for the suppression of the handgun. The Defendant, however, continues to urge suppression of any statements made by the Defendant because of the lack of any *Miranda* warnings being given. The Government asserts that no *Miranda* warnings were required to be administered because at that point in time there was no custodial interrogation, merely a detention.

9. The concept of "custodial interrogation" is central to the *Miranda* case. The *Miranda* warnings need not be given to "persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected" by the decision. *Miranda v. Arizona*, 384 U.S. 436, 477 (1966); *Roberts v. U. S.*, 445 U.S. 552, 560-561(1980)(Miranda "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed. The warnings protect persons who, exposed to such interrogation without the assistance of counsel, otherwise might be unable to make a free and informed choice to remain silent.").

10. The Fifth Circuit has stated that an individual's Fifth Amendment right against self-incrimination is implicated only during a "custodial" interrogation. *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005)("The Supreme Court defines custodial interrogation as questioning initiated by law enforcement officers after a person has been taken into custody. A suspect is in custody for these purposes either (1) when he is formally arrested or (2) when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree

      that the law associates with formal arrest.").

11. The Government contends that the Defendant had not yet been formally arrested when he was initially questioned. Indeed, the Government argues that the Defendant was told by one of the police officers that he was merely being detained and not arrested. This Court will thus turn to whether "a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest."

12. In *U.S. v. Chavez*, 281 F.3d 479, 486 (5th Cir. 2002), the Fifth Circuit concluded that Chavez was not in custody when while working as an armed security guard Chavez was allowed to keep his weapon, was always in a public setting, and was never told that he was suspected of criminal activity or that he could not leave. In *U.S. v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006), Courtney was found not to be in custody for *Miranda* purposes at the time she was interviewed by law enforcement agents, where defendant voluntarily agreed to meet with the agents at a location of her choice, a public restaurant, she was not told that she was not free to leave, nor was she told that she had to meet with the agents, the agents did not display their weapons, they were not in uniform, and, at the end of the interview, the defendant left.

13. In this case, Vega was already under suspicion for engaging in a public disturbance/fighting. In addition, Sigala was clearly intoxicated and one officer suspicioned that the Defendant was also intoxicated. Once the handgun was found, the Defendant was handcuffed. He clearly was not free to leave after that point. The officers suspected that the Defendant was the owner of the car and that he was solely or jointly in possession of the handgun. During cross-examination by Defendant's counsel at the suppression hearing, Officer Onofre stated that "he [Vega] wasn't able to leave at that time." Trans., Pg. 27, Line 1.

14. The Government correctly argues that not every handcuffing of a suspect transforms an investigation into a custodial interrogation. *See U.S. v. Fornia-Castillo*, 408 F.3d 52, 64 (1st Cir. 2005)("reasonable safety concerns permeated the officer's decision to use handcuffs"). *See also U.S. v. Bennett*, 329 F.3d 769, 774 (10th Cir. 2003)("Police may use firearms and handcuffs as part of a permissible detention when they reasonably believe it is necessary for their safety and protection . . . . Once Mr. Bennett emerged from the garage, the police acted reasonably in minimizing the risk of harm to themselves and others by securing Mr. Bennett to determine if he had any weapons. Their use of firearms and handcuffs did not transform Mr. Bennett's detention into an arrest. We also conclude Mr. Bennett's detention did not become an arrest while the police questioned him about his drug-related activities and the firearm silencer. The police did not restrain Mr. Bennett once they determined he did not possess any weapons. They told him he was not under arrest and he did not have to answer questions. Mr. Bennett agreed to talk with the police. Although the police told him he

      did not need to accompany them to a nearby Wyoming Division of Criminal Investigation office for questioning, he agreed to accompany them. Mr. Bennett rode to the office in the front seat of a police car. When Mr. Bennett indicated he did not want to answer further questions at the office, the police returned him to his home.").

15.     This Court concludes this case more closely resembles *U.S. v. Martinez*, 462 F.3d 903, 909 (8th Cir. 2006)("Martinez was detained by two officers, patted down for weapons (with none being found), and closely questioned about his possession of weapons. Then, he was handcuffed and told he was being further detained. This occurred before being questioned by the two officers. A reasonable person would not, considering the totality of the circumstances, feel he was at liberty to stop the questioning and leave. Martinez's freedom was restricted to a degree often associated with formal arrest, and we find he was in custody at the time he was handcuffed. He was interrogated about the wad of cash while in this custody, being asked at least twice to explain the presence of the cash. Thus, we find that Martinez was subjected to custodial interrogation.").

16.     In this case, prior to being handcuffed, the Defendant had already been patted down and no handguns or other weapons were found. The small knife on the Defendant's person was removed and posed no danger. Accordingly *Fornia-Castillo* and *Bennett* (officer safety exception) are distinguishable. Further, unlike the *Bennett* case relied upon by the Government, this Defendant remained handcuffed even after it was determined he had no firearm on his person. Officer Onofre testified at the suppression hearing that Vega was not free to leave when he was questioned by the officers. Vega, unlike Bennett, was not informed that he did not have to answer any questions. Vega was asked to incriminate himself when he was asked if he was the owner of the weapon found in the car. Vega was subjected to custodial interrogation and a reasonable person in Vega's position would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest.

    Defendant's Motion to Suppress (docket no. 16) is GRANTED, in part and DENIED, in part. The handgun found in the car is not suppressed. The verbal statements described above made by the Defendant are suppressed.

    SIGNED this 8th day of January, 2007.

                                    XAVIER RODRIGUEZ
                                    UNITED STATES DISTRICT JUDGE